**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| *In Re: ACTOS (Pioglitazone) Products Liability Litigation* | MDL NO. 6:11-md-2299 |
| ALLIED SERVICES DIVISION WELFARE FUND, on behalf of itself and all others similarly situated, | JUDGE DOHERTY |
| | MAGISTRATE HANNA |
| Plaintiff, | CIVIL ACTION NO. |
| v. | |
| TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., TAKEDA PHARMACEUTICALS USA INC., f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER, INC., TAKEDA CALIFORNIA INC., f/k/a TAKEDA SAN DIEGO, INC., TAKEDA PHARMACEUTICALS COMPANY LLC, and ELI LILLY AND COMPANY, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Pursuant to the Amended Case Management Orders allowing direct filing in this MDL

Court, Plaintiff Allied Services Division Welfare Fund (hereinafter, "ASD" or "Plaintiff"), on

behalf of itself and all others similarly situated, brings this action against Defendants Takeda

Pharmaceuticals International, Inc., Takeda Pharmaceuticals USA Inc., f/k/a Takeda

Pharmaceuticals North America Inc., Takeda Pharmaceutical Company Limited, Takeda Global

Research & Development Center Inc., Takeda California Inc., f/k/a Takeda San Diego, Inc.,

Takeda Pharmaceuticals Company LLC, and Eli Lilly and Company (collectively,

"Defendants"), based upon information and investigation and allege as follows:

<u>**NATURE OF THE CASE**</u>

1.      This action stems from Defendants' scheme to market and promote Actos and pioglitazone-containing medicines including Actoplus Met, Actoplus Met XR, and Duetact (hereinafter collectively referred to as "Actos"), which are prescription medicines for the treatment of Type 2 diabetes. Defendants' marketing scheme has included deliberately concealing, suppressing and affirmatively misrepresenting the significant safety risks associated with the use of Actos, including but not limited to bladder cancer and heart damage.

2.      Defendants marketed and promoted Actos as a safe and effective means of improving blood sugar (glucose) control.  However, as has been revealed, it is not safe and poses a significant risk of bladder cancer and heart damage.

3.      Defendants failed to adequately warn patients and healthcare providers that there is a reasonable association of Actos to bladder cancer and heart damage.

4.      Defendants have concealed, and continue to conceal, from Plaintiff, treating physicians and healthcare providers, Defendants' knowledge of Actos' propensity to cause bladder cancer and heart damage.

5.      As the direct and proximate result of Defendants' wrongful conduct in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the prescription drug Actos, Plaintiff was injured by paying a higher price for, and in greater quantities of Actos than they would have paid if Plaintiff had been informed of the associated risks of bladder cancer and heart damage.  Alternatively, Plaintiff was injured by paying a premium price for Actos when they would have sought cheaper, safer and less costly alternative drugs such as metformin.

6.      Defendants knew or should have known that Actos was unsafe as compared to other diabetes medications such as metformin.  As a result of Defendants' failure to adequately warn consumers, third-party payors, prescribing doctors, and the medical community that the use of Actos is associated with greater risk bladder cancer and/or heart damage.  Thus, Plaintiff paid for more prescriptions at a higher cost than they otherwise would have paid and suffered direct damages.

7.      In addition to the resulting personal injuries, unnecessary deaths, and the profound implications for public health, the financial toll that Defendants' false and deceptive marketing of Actos has had on Plaintiff has been dramatic.  Relying upon Defendants' promises that Actos was safe for its intended use, that it did not have high and/or unacceptable levels of life-threatening side effects, that it would improve health, that it would maintain health, and that it would potentially prolong life, third-party payors and consumers of Actos have paid a hefty premium. Defendants' omissions of, and deliberate misrepresentations related to, critical information regarding the serious health risks associated with Actos have caused financial harm to Plaintiff, who hereby seek compensatory, punitive and statutory damages, and injunctive relief to prevent Defendants from continuing their unlawful activities, reasonable attorneys' fees and such other just relief as the Court may award.

8.      Had Plaintiff or their subscribers been warned that there was a reasonable association that Actos can cause bladder cancer and/or heart damage, Plaintiff and their subscribers would have chosen safer, readily available medicines such as metformin. These alternatives are proven effective at treating Type 2 diabetes without an increased risk of serious, deadly adverse events, including bladder cancer and heart damage at a lower price.

## PARTIES

9.     Plaintiff Allied Services Division Welfare Fund is a health and welfare benefit fund with its principal place of business at 53 West Seegers Road, Arlington Heights, Illinois, 60005, and is involved in the business of providing health benefits for covered lives. Plaintiff Allied Services Division Welfare Fund is a multi-employer employee welfare benefit plan, within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1001(2), and § 1002(37). Membership comes from different types of unions, many in transportation services industry such as railroads, and airlines.  At all relevant times, Plaintiff has paid and/or provided reimbursement for some or the entire purchase price for Actos during the Class Period.  Plaintiff has sustained injury as a result of Defendants' illegal and wrongful conduct alleged herein.

10.     Defendant TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business, TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

11.     Upon information and belief, Defendant TAKEDA PHARMACEUTICALS USA INC. is a Delaware corporation, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.  As part of its business, TAKEDA PHARMACEUTICALS USA INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

12.     Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED is a Japanese corporation having a principal place of business at 1-1, Doshomachi 4-chome, Chuoku, Osaka, Japan. As part of its business, TAKEDA PHARMACEUTICAL COMPANY LIMITED

is involved in the research, development, sales, and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

13.     Defendant TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC. is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business, TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

14.     Defendant TAKEDA CALIFORNIA INC. is a California corporation, having a principal place of business at 10410 Science Center Drive, San Diego, CA 92121.  As part of its business, TAKEDA CALIFORNIA INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

15.     Defendant TAKEDA PHARMACEUTICALS COMPANY LLC is a Delaware limited liability company, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.   As part of its business, TAKEDA PHARMACEUTICALS COMPANY LLC is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

16.     Defendant ELI LILLY AND COMPANY is an Indiana corporation, having a principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285.  As part of its business, ELI LILLY AND COMPANY is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

17.     Upon information and belief, at all relevant times, Defendants were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the States of Louisiana

and Illinois, either directly or indirectly through third parties or related entities, its products, including Actos and pioglitazone hydrochloride.

18.     At all relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the States of Louisiana and Illinois, which included but was not limited to selling, marketing and distributing its products (including Actos and pioglitazone hydrochloride) in Louisiana and Illinois.

19.     Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the States of Louisiana and Illinois, and Defendants derived and derive substantial revenue from interstate commerce.

20.     Upon information and belief, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED is a company domiciled in Japan and is the parent/holding company of Defendants TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS USA INC., TAKEDA PHARMACEUTICALS COMPANY LLC, TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC., and TAKEDA CALIFORNIA INC.

21.     Upon information and belief, at all relevant times, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED exercised and exercises dominion and control over Defendants TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS USA INC., TAKEDA PHARMACEUTICALS COMPANY LLC, TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC., and TAKEDA CALIFORNIA INC.

22.     Upon information and belief, at all relevant times, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED expected or should have expected that its acts would have consequences within the United States of America and the States of Louisiana and Illinois, and derived and derive substantial revenue from interstate commerce.

23.     Upon information and belief, at all relevant times, Defendants, including Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED, have transacted and conducted business in the States of Louisiana and Illinois and/or contracted to supply goods and services within the States of Louisiana and Illinois and these causes of action have arisen from same.

24.     Upon information and belief, at all relevant times, Defendants, including Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED, committed a tortious act within the States of Louisiana and Illinois causing injury within the States of Louisiana and Illinois out of which act(s) these causes of action arise.

25.     Upon information and belief, at all relevant times, Defendant ELI LILLY AND COMPANY expected or should have expected that its acts would have consequences within the United States of America and the States of Louisiana and Illinois, and derived and derive substantial revenue from interstate commerce.

26.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY, have transacted and conducted business in the States of Louisiana and Illinois and/or contracted to supply goods and services within the States of Louisiana and Illinois and these causes of action have arisen from same.

27.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY, committed a tortious act within the States of

Louisiana and Illinois causing injury within the States of Louisiana and Illinois out of which act(s) these causes of action arise.

28.     Upon information and belief, at all relevant times, Defendants, including ELI LILLY AND COMPANY, committed tortuous act(s) within the States of Louisiana and Illinois out of which act(s) these causes of action arise.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed class exceeds $5,000,000, and at least one member of the putative class is a citizen of a state different from that of one of the Defendants. Jurisdiction also rests under 28 U.S.C. § 1331 because Counts IX and X arise under the laws of the United States.

30.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this District, and some of the actions giving rise to the Complaint took place in this District.

31.     This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

32.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants, as corporations, are deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, Defendants transact business within the District, and some of the events establishing the claims arose in this District.

## FACTUAL ALLEGATIONS

33.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold Actos for the treatment of type II diabetes mellitus.

34.     Actos was jointly launched by Takeda North America and Eli Lilly & Company (hereinafter "Lilly") in 1999.

35.     On April 20, 2006, Takeda Limited announced the conclusion of its collaboration in the United States between Takeda North America and Lilly to promote and market Actos, a partnership Takeda Limited described as "a great success" and "mutually beneficial to both companies."

36.     According to the American Diabetes Association, type II diabetes is the most common form of diabetes.  Type II diabetes develops when the body does not produce enough insulin or doesn't efficiently use the insulin that it does produce.  Type I diabetes occurs when the body does not produce any insulin at all.  Insulin is necessary for the body to be able to use glucose for energy.

37.     Actos was approved by the Food and Drug Administration ("FDA") in July of 1999 to treat type II diabetes.  Actos is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZD's").

38.     Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin.  Therefore, Actos is only used to treat type II diabetes and should not be used to treat type I diabetes.

39.     Actos is sold as a single ingredient product under the brand name Actos, and it is also sold in combination with metformin (Actoplus Met, Actoplus Met XR) and in combination

with glimepiride (Duetact).

40.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos for more than twelve (12) months, including Plaintiff's insureds, have suffered and may continue to suffer from bladder cancer and heart damage.

41.     Defendants concealed and continue to conceal their knowledge that Actos can cause bladder cancer from Plaintiff's insureds, other consumers, and the medical community. Specifically, Defendants have yet to adequately inform consumers and the prescribing medical community about the risks of bladder cancer with the use of Actos for more than twelve (12) months.

42.     As a result of Defendants' actions and inactions, including the suppression of information and a fraudulent marketing scheme, Plaintiff paid for prescriptions of Actos on behalf of plan members and their beneficiaries.

43.     As a result of Defendants' concerted activity, they were able to create a market for Actos and to sell Actos at a premium price over other less expensive drugs and to have it become a standard treatment option in many circumstances, as opposed to the use of safer, less expensive alternatives such as metformin.

44.     Defendants' conspired to supplant the safer, less costly alternatives readily available on the market.  According to published consumer reports, a prescription of metformin cost $4.00 per month, while the Actos prescription cost $280.00 per month.

45.     Defendants knew that without their fraudulent scheme, consumers and third-party payors would not have paid for Actos instead of the less-costly and less-dangerous, but equally or more effective drugs already available.  Defendants' promotion and marketing of Actos's

safety and effectiveness was highly successful, resulting in Defendants receiving billions of dollars in profits, representing ill-gotten gains to which Defendants were not entitled.

46.     Plaintiff and similarly situated Class Members bear the ultimate responsibility of paying for their members' prescriptions for Actos.

47.     In this action, Plaintiff seeks damages arising from the purchases of Actos resulting from Defendants' illegal scheme and/or conduct.

48.     The Plaintiff purchased Actos based on the cumulative impact of Defendants' wrongful conduct as alleged herein, and were damaged as a direct and foreseeable result of such conduct.

49.     Prior to Actos being approved by the FDA, a two-year carcinogenicity study was conducted on male and female rats.  Drug-induced tumors were observed in male rats receiving doses of Actos that produced blood drug levels equivalent to those resulting from a clinical dose.

50.     In 2005, the results of the PROactive (PROspective PioglitAzone Clinical Trial In MacroVascular Events) three-year study were published.  PROactive prospectively looked at the impact in total mortality and macrovascular morbidity using Actos.  Dormandy J.A., et al. *Secondary Prevention of Macrovascular Events in Patients with Type 2 Diabetes in the PROactive Study (PROspective Pioglitazone Clinical Trial in MacroVascular Events): a Randomized Controlled Trial*, Lancet, 266:1279-1289 (2005).

51.     The PROactive study was looking at cardiovascular events and outcomes. However, the study demonstrated a higher percentage of bladder cancer cases in patients receiving Actos versus comparators. This information was not included in the published Dormandy paper.

52.     A thee-year liver safety study was also performed, and according to the FDA, that study also demonstrated a higher percentage of bladder cancer cases in patients receiving Actos versus comparators.

53.     On September 17, 2010, the FDA issued a Safety Announcement stating it was undertaking a review of the data from an ongoing, ten-year epidemiological study being conducted by Kaiser Permanente to evaluate the association between Actos and bladder cancer. The planned five-year interim analysis demonstrated that the risk of bladder cancer increases with increasing dose and duration of Actos use, reaching statistical significance after 24 months.

54.     Despite this finding by the FDA, Robert Spanheimer, Vice President of Medical and Scientific Affairs for Takeda, claimed to Reuters that the Kaiser Permanente study had not shown a risk of bladder cancer or other cancers from Actos to patients.

55.     In early 2011, the American Diabetes Association published *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting*, Piccinni, et al.  Diabetes Care 34:1369-1371 (June 2011), published ahead of print April 22, 2011.  This study looked at adverse events reports made to the FDA between 2004 and 2009. The conclusion of that study was that "[i]n agreement with preclinical and clinical studies, AERS analysis is consistent with association between pioglitazone and bladder cancer.  This issue needs constant epidemiologic surveillance and urgent definition by more specific studies."

56.     On June 9, 2011, the European Medicines Agent ("EMA") announced that it had been informed by the French Medicines Agency ("Afssaps") of its decision to suspend the use of pioglitazone-containing medicines (Actos, Competact) in France while awaiting the outcome of the ongoing European review.

57.     France's decision was based upon a retrospective cohort study in France using the French National Health Insurance Plan which demonstrated a statistically significant increase in the risk for bladder cancer in males exposed to Actos for more than a year.  The French cohort included 1.5 million patients with diabetes that were followed for 4 years (2006 - 2009).

58.     On June 10, 2011, Reuters published that Germany had joined France in suspending the use of Actos after Germany's Federal Institute for Drugs and Medical Devises ("BfArM") reviewed the results of the French study.  BfArM recommended that doctors should not put new patients on pioglitazone.

59.     On June 15, 2011, the FDA issued another Safety Announcement stating, "that use of the diabetes medication Actos (pioglitazone) for more than one year may be associated with an increased risk of bladder cancer."  The FDA ordered information about this risk to be added to the *Warnings and Precautions* section of the label for pioglitazone-containing medicines.

60.     The FDA reported that the risk of bladder cancer increased with increasing dose and duration of pioglitazone use.  When compared to persons never exposed to pioglitazone, exposure to pioglitazone therapy for longer than 12 months was associated with a 40% increase in risk.  Based on this data, the FDA calculated that therapy with Actos for longer than 12 months was associated with 27.5 excess cases of bladder cancer per 100,000 person-years follow-up, compared to those who never used pioglitazone.

61.     On July 12, 2011, Takeda Limited issued a recall of Actos in France.

62.     As the manufacturers of Actos, Defendants knew or should have known that Actos use for longer than 12 months was associated with bladder cancer.  Instead, Defendants promoted Actos as a safe and effective treatment for type II diabetes.

63.     In 2011, another study analyzed the association between antidiabetic drugs and bladder cancer by reviewing reports from the FDA Adverse Event Reporting System ("AERS") between 2004 and 2009.  The association was analyzed by the case/noncase methodology.  There were 31-recorded reports of bladder cancer in patients using pioglitazone.  The results indicated that the reporting odds ratio for pioglitazone was indicative of a "definite risk."  *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting*, Piccinni, et al. Diabetes Care, 34:1369-1371 (June 2011), published ahead of print April 22, 2011.

64.     Despite their knowledge of this dangerous side effect that can result from Actos use, Defendants refused to warn patients, third-party payors, prescribing physicians and the medical community about the risk of bladder cancer.

65.     Actos was one of Defendants' top selling drugs.  Upon information and belief, in 2011, the medication had global sales of over $4.8 billion and accounted for approximately 27% of Takeda's revenue.  In 2008, Actos was the tenth best-selling medication in the United States.

66.     Beginning in the first quarter of 2011, at or about the same time as the release of the American Diabetes Association report, *supra*, sales of Actos decreased by more than 50 percent through the third quarter of 2012.

67.     Purchasers, including Plaintiff and Plaintiff's insureds who have paid for or used Actos for treatment of type II diabetes have (and had) several alternative safer and less costly products available to treat the diabetic conditions.  These purchasers have not been adequately warned about the significant risks and lack of benefits associated with long term Actos therapy.

68.     The generic drug metformin is widely recognized as causing very few adverse effects when prescribed appropriately.

69.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff, Plaintiff's insureds and their prescribing physicians the true and significant risks associated with long-term Actos use.

70.     As a result of Defendants' actions, Plaintiff, Plaintiff's insureds and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff's insureds had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

71.     Plaintiff's insureds were prescribed and began taking Actos at the direction of a physician.  Plaintiff's insureds and their prescribing physicians would not have used Actos had Defendants properly disclosed the risks associated with its use.

72.     Plaintiff contract with an outside vendor to provide pharmacy benefit management services for the drug component of its healthcare plans.  Plaintiff paid or incurred costs for prescriptions of Actos dispensed to covered lives in several states.  These prescriptions would have been restricted and/or priced differently if the FDA, Plaintiff's Pharmacy Benefit Manager ("PBM") and/or prescribers had truthful and complete information about the drug. Plaintiff has been injured as a result of the fraudulent and/or misleading conduct of Defendants as alleged herein.

73.     Pharmacy Benefit Managers ("PBMs") prepare a "formulary," which is a list of the drugs that are approved for coverage by their third-party payor clients, such as Plaintiff and similar Class Members.  In order for a drug to be listed on the formulary, it must be assessed by the PBM for clinical safety, efficacy and cost effectiveness.  Further, where a PBM finds that a

drug has an advantage over competing drugs, that drug is given a preferred status on its formulary.

74.     The level of preference on the formulary corresponds with the amount that a plan participant must contribute as a co-payment when purchasing a drug – the higher the preference, the lower the co-payment, the more likely that drug will be purchased by a prescription plan's beneficiary in lieu of a cheaper or more cost effective alternative, and *vice versa*. As such, the higher a drug's preference on the formulary, the more likely it is for a physician to prescribe that drug. This system is well known to pharmaceutical manufacturers, including Defendants.

75.     Due to the large number of drugs purchased through third-party payors, it is vital to a drug manufacturer's economic interests to have its products listed on as many formularies as possible.

76.     By directly and falsely promoting Actos as safe and effective, and by actively suppressing and failing to timely disclose negative data and results of drug studies related to bladder cancer risks to avoid or dismiss any safety concerns raised by physicians and the medical community, Defendants influenced PBMs to place Actos on their formularies without any restrictions.

77.     Through Defendants' misleading drug labels and the adulterated clinical findings for Actos, Defendants falsely promoted Actos as safe for the treatment of Type II diabetes directly to PBMs in order to get Actos placed on, or placed more favorably than, its competitor drugs on the PBM formularies.

78.     Patients, physicians, PBMs, pharmacy and therapeutic committees, and third-party payors detrimentally relied on Defendants' misrepresentations of Actos' safety. Physicians detrimentally relied on Defendants' misrepresentations of Actos's safety and efficacy in

prescribing the drugs for their patients.   Patients detrimentally relied on Defendants' misrepresentations of Actos's safety and efficacy in purchasing the drugs.  PBMs and pharmacy and therapeutic committees detrimentally relied on Defendants' misrepresentations of Actos's safety and efficacy when approving and/or placing the drugs on formularies.  Third-party payors detrimentally relied on Defendants' misrepresentations of Actos's safety and efficacy in reimbursing and/or paying for prescriptions of Actos for their members and have suffered direct damages.

79.   Defendants' failed to adequately inform consumers, prescribing physicians, third-party payors and those in the medical community of the negative data and study results indicating that Actos was not proven as safe and effective for the treatment of Type II diabetes because it carried an undisclosed risk of bladder cancer and heart disease.   Their false and misleading promotion of Actos' safety over other safer, less expensive treatments such as metformin caused patients and third-party payors to pay for Actos in greater quantities and at higher prices than they would have but for Defendants' misconduct.

80.   In April, 20015, Takeda Pharmaceutical Company and its American subsidiary Takeda Pharmaceuticals USA agreed to settle personal injury claims for an estimated $2.37 billion dollars.

## CLASS ACTION ALLEGATIONS

81.   Plaintiff incorporates by reference all proceeding paragraphs as is fully set forth herein, and further allege as follows:

82.   Plaintiff brings this action on behalf of itself and, under Rule 23 of the Federal Rules of Civil Procedure, as representatives of the proposed Class defined as follows:

> "All persons or entities in the United States and its territories (other than state governmental entities, who purchased and/or paid, in whole or in

part, for Actos during the period from June 15, 1999 through the present (the "Class Period")."

83.    The following persons or entities are excluded from the proposed Class:

a.    Defendants and its officers, directors, management, employees, subsidiaries, or affiliates;

b.    All persons or entities who purchased Actos for purposes of resale or directly from Defendants or their affiliates;

c.    Any co-conspirators; and

d.    The judges in this case and any members of their immediate families.

84.    Plaintiff and the Class Members bring this action for equitable relief and damages pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).

85.    Members of the Class are so numerous that joinder is impracticable. Plaintiff believes the Class includes thousands of consumers and third-party payors.

86.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class seek a refund or reimbursement of all amounts they have expended for the purchase of Actos, and all other ascertainable economic losses and such other relief as Plaintiff and the Class Members are entitled to, including damages and reasonable attorneys' fees and costs.

87.    Plaintiff is represented by counsel competent who are experienced in the prosecution of class actions and pharmaceutical litigation.

88.    Plaintiff will fairly and adequately protect and represent the interests of the Class. Plaintiff's interests are coincidental with, and not antagonistic to, those of the Class. Accordingly, the interests of the Class will be adequately protected and advanced.

89.     Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.  These common questions of law and fact include, but are not limited to:

a.   Whether Plaintiff and the Class Members paid more for Actos than for other equally or more effective drugs that were available at a cheaper price;

b.   Whether Defendants engaged in a comprehensive program of deceptive marketing in promoting the use of Actos;

c.   Whether Defendants engaged in a conspiracy to promote the sales of and suppress adverse information about Actos;

d.   Whether in marketing and selling Actos, Defendants failed to disclose the dangers and health risks of ingesting the drug;

e.   Whether Defendants failed to warn adequately of the adverse effects of Actos for the treatment Type II Diabetes;

f.   Whether Defendants misrepresented in their advertisements, promotional materials and other materials, among other things, the safety and lack of dangers and health risks of Actos;

g.   Whether Defendants knew or should have known that the ingestion of Actos would place ingesting patients at increased risk for developing bladder cancer and/or suffering heart damage;

h.   Whether Defendants manufactured, marketed, distributed and sold Actos notwithstanding their knowledge of the drug's dangerous nature;

i.   Whether Defendants knowingly omitted, suppressed and/or concealed material facts about the unsafe and defective nature of Actos from government regulators, healthcare professionals, third-party payors, the medical community and/or the consuming public;

j.   Whether Defendants engaged in deceptive and/or misleading activity that directly caused Plaintiff and the Class Members to pay more for Actos prescriptions than for other efficacious drugs that were available at a cheaper price;

k.   Whether Defendants engaged in deceptive and/or misleading activity with the intent to defraud Plaintiff and the Class Members;

l.   Whether Defendants are liable to Plaintiff and the Class Members for damages for conduct actionable under RICO; and

m.  Whether Defendants unjustly enriched themselves by their acts and omissions, at the expense of Class Members.

90.     These and other questions of law and/or fact are common to the Class and predominate over any question affecting only individual Class Members.

91.     The claims of the class representatives are typical of the claims of the Class in that the named class representatives and members of the Class each paid for or reimbursed members for the costs of the prescription drug Actos due to the improper actions of Defendants, as described herein.

92.     Adjudicating the claims of the Class Members as a class action is superior to any other available methods because it allows for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitious litigation and will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that would result from prosecuting numerous individual actions.

93.     Proceeding as a class action is a superior method for fairly and efficiently adjudicating this controversy. There are no known circumstances presenting difficulties in management that would preclude maintenance as a class action. Furthermore, any potential difficulties in maintaining this action as a class action are greatly outweighed by the benefits of proceeding through the class mechanism — *i.e.*, providing persons and entities a method for pursuing claims that would not be practicable if pursued on an individual basis.

## CAUSES OF ACTION

## COUNT I - VIOLATION OF 18 U.S.C. § 1962 (C)

## RICO RACKETEERING ENTERPRISE

94.    Plaintiff hereby restates and re-alleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length, and further allege as follows:

95.    Defendants are "persons" within the meaning of 18 U.S.C. §1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962 (c).

96.    The Takada family of companies (Takeda Pharmaceuticals International, Inc., Takeda Pharmaceuticals USA Inc., f/k/a Takeda Pharmaceuticals North America Inc., Takeda Pharmaceutical Company Limited, Takeda Global Research & Development Center Inc., Takeda California Inc., f/k/a Takeda San Diego, Inc., Takeda Pharmaceuticals International Inc., Takeda Pharmaceutical Company LLC) associated with or combined with Eli Lilly and Company for the common purpose of engaging in a course of racketeering conduct - specifically the development of a market for Actos through fraudulent means and sell Actos at a premium price over other safer, less expensive drugs.

97.    This association in fact enabled Defendants to fraudulently market and promote Actos as scientifically superior to other less expensive drugs and ultimately develop a market for Actos through fraudulent means and sell Actos at a premium price over other safer, less expensive drugs.

98.    Defendants fostered their enterprise through the deceptive marketing practices outlined above to increase the number of people and associations using Actos instead of the readily available, safer, less costly drugs.

99.    Defendants created and maintained their enterprise through a systematic pattern of racketeering activity, including deceptive or fraudulent marketing activity and improper

inducements to physicians, and exploited a niche in the market with a competitor drug that was redundant with older, cheaper pharmaceutical therapies that were widely available.

100.    Defendants received substantial revenue from their scheme, and these revenues were far greater than they would have been had the fraudulent acts not been undertaken. The distinct entities identified above each profited from the exercise of the enterprise.

101.    The behavior of the Defendants, as distinct entities acting in concert, constituted an ongoing pattern of activity that affected interstate commerce, because, *inter alia*, the fraudulent activities described herein led to the marketing and sale of Actos to thousands of individuals and entities throughout the United States.

102.    Defendants conducted and participated in the affairs of their deceptive marketing enterprise through patterns of racketeering activity that included acts indictable under 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud) and § 1952 (use of interstate facilities to conduct unlawful activity).

103.    Defendants' use of the mails and wires to perpetuate their fraud involved thousands of communications, including but not limited to:

      a.     communications with and among enterprise participants that led to the suppression and failure to timely disclose negative data and results of drug studies that called into question the safety and efficacy of Actos;

      b.     communications with and among the enterprise participants that fraudulently misrepresented the efficacy and safety of Actos amongst themselves and others;

      c.     communications with patients and Class Members, including Plaintiff, inducing payments for Actos by misrepresenting the safety and efficacy of Actos;

      d.     receiving the proceeds in the course of and resulting from Defendants' improper scheme;

      e.     transmittal and receipt of monies from consumers and third-party payors;

f.    communications with and among the enterprise participants to conceal the fraud occurring by virtue of failing to disclose the results of negative studies;

g.    communications with and among the enterprise participants to develop and implement the promotional strategy;

h.    communications with and among the enterprise participants to develop and implement the publications strategy;

i.    communications with and among the enterprise participants for the purpose of inducing doctors to become high prescribers through various forms of illegal remuneration; and

j.    transmittal and receipt of payments in exchange for, directly or indirectly, activities in furtherance of the Actos deceptive marketing scheme.

104.    Defendants knew that without their fraudulent scheme, consumers and third-party payors would not have paid for Actos instead of other safer, less expensive drugs.  At all times during the fraudulent scheme, Defendants and the fraud participants had a legal and ethical obligation of candor and honest dealing with consumers, third-party payors, physicians, and the medical community.

105.    Defendants' scheme was calculated to ensure that Actos was prescribed in great quantities by physicians in place of other safer, less expensive alternatives with the knowledge of and active suppression of studies indicating safety concerns.

106.    The conduct of the Defendants' marketing scheme described above constituted "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Defendants' decisions and activity in connection with the Actos marketing scheme to routinely conduct its transactions in such a manner constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

107.    The above-described racketeering activities amounted to a common course of conduct intended to deceive and harm the FDA, physicians, the public, PBMs, Plaintiff and members of the Class.  Each such racketeering activity was related, had similar purposes,

involved similar or the same participants, had similar methods of commission, and had similar results affecting the same or similar victims, including Plaintiff and members of the Class.

108.    Plaintiff and members of the Class have been injured in their property by reason of these violations in that Plaintiff and members of the Class paid millions of dollars for Actos that they would not have paid had Defendants not engaged in this pattern of racketeering activity.

109.    The injuries to Plaintiff and members of the Class were directly and proximately caused by Defendants' racketeering activity.

110.    By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff and the Class for three times the damages sustained, plus the costs of this suit, including reasonable attorneys' fees.

### COUNT II - VIOLATION OF 18 U.S.C. § 1962 (d) – RICO CONSPIRACY

111.    Plaintiff hereby restates and re-alleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length, and further allege as follows:

112.    Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provision of subsection (a), (b), or (c) of this section."

113.    Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the promotion of Actos as described previously through a pattern of racketeering activity. The Defendants conspired with, *inter alia,* each other, publicists, sales representatives, medical professionals, academics and other intermediaries to promote Actos and suppress information about the harms known to result from Actos use.

114.    Defendants' and their co-conspirators have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiff and members of the Class.

115.    The nature of the above-described acts by Defendants' and their co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § l962(c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

116.    As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § l962(c), Plaintiff and the Class Members have been and are continuing to be injured in their business or property as set forth more fully above.

117.    Defendants sought to and have engaged in the commission of and continue to commit overt acts, including the following unlawful racketeering predicate acts:

    a.    Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1342;

    b.    Multiple instances of mail fraud violation of 18 U.S.C. §§ 1341 and 1346;

    c.    Multiple instances of wire fraud violations of 18 U.S.C. §§ 1341 and 1346;

    d.    Multiple instances of unlawful activity in violation of 18 U.S.C. § 1952.

118.    Defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue.  Plaintiff and members of the Class have

been injured in their property by reason of these violations in that Plaintiff and members of the Class have made paid hundreds of millions of dollars for Actos that they would not have made had Defendants not conspired to violate 18 U.S.C. § 1962(c).

119.    Injuries suffered by Plaintiff and members of the Class were directly and proximately caused by Defendants' racketeering activity as described above.

120.    Patients, physicians, PBMs, third-party administrators, pharmacy and therapeutic committees, and third-party payors, including Plaintiff and the Class Members, directly relied on the racketeering activities of the Defendants.  Plaintiff and Class members, both directly and indirectly, relied on the representations as to the efficacy and safety of Actos as promoted by Defendants.  Because Defendants controlled all knowledge of the tests upon which the claims of Actos's efficacy and safety were based, all Class members, as well as other members of the medical and consuming public were obligated to rely on Defendants' representations about Actos.  Further, Defendants perpetuated this reliance by taking the steps itemized above to suppress the dissemination of any critical information about Actos.

121.    By virtue of these violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff and the Class for three times the damages Plaintiff and the Class Members have sustained, plus the cost of this suit, including reasonable attorney's fees.

122.    By reason of the foregoing, and as a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff and the Class Members have suffered damages. Plaintiff and the Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## COUNT III – FRADULENT MISREPRESENTATION

123.     Plaintiff hereby restates and re-allege each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length, and further allege as follows:

124.     Defendants made intentional and/or reckless and/or negligent misrepresentations of material facts to Plaintiff, their members, medical providers and the general public, including, but not limited to:

      a.      That Actos is a safe and effective drug for the use by Type II Diabetics;

      b.      That Actos was a safer and more effective drug than other Type II Diabetic drugs or treatments;

      c.      That Actos has significant or superior health benefits, especially as compared to other drugs, including but not limited to, superior lipid profile benefits, superior organ and tissue benefits, superior blood sugar control, and/or significant reduced risk for heart related adverse events;

      d.      That Actos had a favorable safety profile, and had fewer adverse health and side effects than were known or should have been known by Defendants; and

      e.      That Actos poses no statistically significant risk of cancer to the urinary tract and/or bladder in humans.

125.     These misrepresentations were false and misleading at the time they were made.

126.     Defendants' misrepresentations of material facts were made intentionally and/or maliciously and/or oppressively and/or fraudulently and/or wantonly.  Alternatively, Defendants misrepresented material facts recklessly and/or negligently.

127.     Defendants made the foregoing misrepresentations without a reasonable basis and did not possess information on which to accurately base those representations.

128.     When Defendants made the foregoing misrepresentations, they knew or should have known them to be false.

129.    In reliance upon the foregoing misrepresentations by the Defendants, the Plaintiff approved the use of and paid claims related to Actos.  Had Plaintiff known of the true facts, they would not have taken such action.

130.    The Plaintiff, their members, and physicians reasonably and/or justifiably relied on Defendants' misrepresentations because said representations were made by individuals and entities that were in a position to know the true facts.

131.    As a result of the Defendants' fraud and misrepresentations, the Plaintiff has suffered economic loss, rendering Defendants liable for said damages.

132.    Defendants had actual knowledge of facts that their representations in the package insert, the PDR monograph, and other literature were false and misleading.  Defendants had an absolute duty to disclose the true facts regarding the safety of Actos to physician, their patients and the medical community. Defendants negligently failed to fulfill that duty. Furthermore, Defendants had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning Actos.  Defendants failed to fulfill their duty in all of these respects.

133.    Important information regarding the risk of Actos was in the exclusive control of Defendants and was exclusively known by Defendants.  In the furtherance of Defendants' own interests, Defendants disseminated false information regarding Actos to physicians and Plaintiff's insured and did so knowing that the safety of Actos depended on the accuracy of that information.  Further, Defendants knew and expected that recipients of that information would rely on the information, that the recipients would take action based upon the information, that individuals would be put in peril by such actions, and that those individuals would suffer

physical and economic harm as a result.

134.    Defendants expressly and/or impliedly represented to Plaintiff, Plaintiff's insureds, their physicians, the medical community, and the general public that Actos was safe for use.  The representations by Defendants were, in fact, false. The true facts were that Actos was not safe for its intended use and was, in fact, dangerous to the health and body of the Plaintiff's insureds.

135.    Defendants made the above-described representations with no reasonable grounds for believing them to be true.  Defendants failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information.

136.    Defendants fraudulently, negligently, falsely and/or deceptively represented or knowingly omitted, suppressed or concealed facts of such materiality regarding the risk-benefit profile and lack of efficacy of Actos.

137.    Defendants made assertions that were not in accord with facts know to them at the time.

138.    Defendants remained silent and/or offered misleading information despite its knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the risk-benefit profile and lack of efficacy of Actos.  Defendants did so because of the prospect of huge profits - too the significant detriment of Plaintiff and members of the Class.

139.    Defendants were otherwise careless, fraudulent, negligent, grossly negligent, and acted with willful and wanton disregard for the rights of Plaintiff and members of the Class in the representations regarding the risk-benefit profile and lack of efficacy of Actos.

140.    Defendants failed to use reasonable care or competence in obtaining and

communicating such information to Plaintiff and members of the Class; and said information was, in fact, false and/or omitted material facts.

141.    The material misrepresentations and omissions of Defendants were likely to induce a reasonable person to manifest their assent without being fully informed of all the facts.

142.    Plaintiff and members of the Class justifiably relied upon the information provided by defendant to their economic detriment.

### COUNT IV - FRAUDULENT CONCEALMENT

143.    Plaintiff hereby restates and re-alleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length, and further allege as follows:

144.    At all times during the course of dealing between Defendants and Plaintiff, Plaintiff's insureds and/or their healthcare providers, and/or the FDA, Defendants misrepresented the safety of Actos for its intended use.

145.    Defendants knew or were reckless in not knowing that its representations were false.

146.    In representations to Plaintiff, Plaintiff's insureds and their healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

    a.    that Actos was not safe;

    b.    that the risks of adverse events with Actos were high;

    c.    that the risks of adverse events with Actos were not adequately tested and/or known by Defendants;

    d.    that the Defendants were aware of dangers in Actos, in addition to and above and beyond those associated with alternative medications;

e.      that Actos was defective, and that it caused dangerous side effects;

f.      that patients needed to be monitored more regularly than normal while using Actos;

g.      that Actos was manufactured negligently;

h.      that Actos was manufactured defectively;

i.      that Actos was manufactured improperly;

j.      that Actos was designed negligently;

k.      that Actos was designed defectively; and

l.      that Actos was designed improperly.

147.    Defendants were under a duty to disclose to Plaintiff, Plaintiff's insureds and their physicians, healthcare providers, and/or the FDA the defective nature of Actos, including but not limited to the increased risk of bladder cancer and heart damage.

148.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Actos, including the Plaintiff's insureds, in particular.

149.    Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Actos were made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, Plaintiff's insureds, their physicians and healthcare providers into detrimental reliance on misleading information, the continued use of Actos, and the ongoing prescribing, dispensing and purchasing of their product.

150.    Defendants knew that Plaintiff, Plaintiff's' insureds, their physicians, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Actos, as set forth herein.

151.    Plaintiff, Plaintiff's insureds, their physicians, and/or healthcare providers reasonably relied on Defendants' information that negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

152.    As a result of Defendants' fraudulent concealment and omissions of material facts concerning the true risk-benefit profile and safety of Actos, Plaintiff has suffered economic loss as previously described, rendering Defendants liable for said damage.

## COUNT V - FRAUD AND DECEIT

153.    Plaintiff hereby restates and re-alleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length, and further allege as follows:

154.    Defendants conducted research and used Actos as part of their research, and subsequently distributed false information assuring the public, the Plaintiff, Plaintiff's insureds, their physicians, healthcare providers, and/or the FDA that Actos was safe and effective for use.

155.     Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff, Plaintiff's insureds, healthcare providers, PBMs and/or the FDA.

156.    The information distributed by Defendants intentionally included representations that Defendants' drug Actos carried the same risks, hazards, and/or dangers as other alternative medications.

157.    Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that Actos was not safe.

158.    It was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the medical community, to gain the confidence of the public, healthcare providers, the FDA, Plaintiff, Plaintiff's insureds and their physicians, to falsely ensure the quality and fitness for use of Actos and induce the public, and/or the Plaintiff, Plaintiff's insureds and their physicians to purchase, request, dispense, prescribe, recommend, and/or continue to use Actos.

159.    Defendant made claims and representations in its documents submitted to the FDA, to the public, to healthcare providers, Plaintiff, Plaintiff's insureds and their physicians that Actos did not present health and/or safety risks greater than alternative forms of medication such as metformin.

160.    These representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

161.    Defendants, through their public relations efforts (which included but were not limited to the public statements and press releases) knew or should have known that the public, the Plaintiff, Plaintiff's insureds and their physicians would rely upon the information being disseminated.

162.    Defendants utilized direct to consumer advertising to market, promote, and/or advertise Actos.  The Plaintiff, Plaintiff's insureds and their physicians, and healthcare providers did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations and were thereby induced to purchase, use and rely on Defendants' drug Actos.

163.     At the time the representations were made, the Plaintiff, Plaintiff's insureds, their physicians and healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of Actos.

164.     The Plaintiff, Plaintiff's insureds, their physicians and healthcare providers did not at that time discover the true facts with respect to the dangerous and serious health and/or safety concerns, or the false representations of Defendants.   Neither could the Plaintiff, Plaintiff's insureds, their physicians and healthcare providers have discovered with reasonable diligence the true facts of the dangerous nature of Actos.

165.     Had the Plaintiff, Plaintiff's insureds, their physicians and healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Actos, Plaintiff and Plaintiff's insureds would not have purchased, used and/or relied on Defendants' drug Actos.

166.     The Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff, Plaintiff's insureds and their physicians.

167.     As a result of the foregoing acts and omissions concerning the true risk-benefit profile and safety of Actos, Plaintiff has suffered economic loss as previously described, rendering Defendants liable for said damages.

### COUNT VI - UNJUST ENRICHMENT

171.     Plaintiff hereby restates and re-alleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length, and further allege as follows:

172.    Plaintiff having purchased and/or made payments with respect to its members' prescriptions for Actos have unjustly enriched Defendants.

173.    In order to maintain sales and profits, Defendants knowingly and intentionally withheld material facts that would have informed Plaintiff and the medical community that Actos's risks outweighed its benefits and that it should not have been a covered prescription medication available to plan members.  The cumulative effect of Defendants' conduct directed at Plaintiff, physicians and consumers was to artificially create a demand for Actos at an artificially inflated price.  Each aspect of Defendants' conduct combined to artificially create sales of Actos.

174.    As a result, the sale of Actos provided ill-gotten gains for Defendants at the expense of Plaintiff and the Class Members, which Defendants cannot justify retaining. Therefore, Defendants have unjustly benefited through the unlawful and/or wrongful collection of payments for Actos and continued to so benefit to the detriment of Plaintiff and the Class Members.

175.    As a direct and proximate result of the Defendants' acts, omissions and conduct as set forth above, Plaintiff and the Class Members are entitled to an award of a refund, restitution, and incidental economic losses, including the purchase price paid for the drug Actos.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Allied Services Division Welfare Fund, individually and on behalf of the Class, respectfully demand judgment for the following relief:

A.    Certification of this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appointment of Plaintiff as a representative of the Class, and appointment of Plaintiff's counsel as Class Counsel;

B.    Enter joint and several judgments against Defendants in favor of Plaintiff and the Class.

C.      Grant Plaintiff and the Class equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment;

D.      Grant Plaintiff and the Class an award for damages and, where applicable, treble, multiple, punitive, and/or other damages, in a such amount to be determined at trial and as provided by applicable law;

E.      Grant Plaintiff and the Class pre-judgment and post-judgment interest on all damages;

F.      Grant Plaintiff and the Class costs of suit, including reasonable attorneys' fees and litigation expenses as provided by law; and

G.      Grant Plaintiff and the Class all such other and further relief as necessary to correct Defendants' unlawful conduct, and as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: March 1, 2016

Respectfully submitted:

*/s/ James R. Dugan, II*
James R. Dugan, II (LSBA# 24785)
Douglas R. Plymale (LSBA# 28409)
David B. Franco (TXSBA# 17508450)
Lanson Bordelon (LSBA# 34251)
THE DUGAN LAW FIRM, APLC
One Canal Place
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181
Email: jdugan@dugan-lawfirm.com
Email: dplymale@dugan-lawfirm.com
Email: dfranco@dugan-lawfirm.com
Email: lbordelon@dugan-lawfirm.com

And

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP

55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 475-1950
Facsimile: (617) 482-3003
Email: tom@hbsslaw.com

Art Sadin (TXSBA #17508)
SADIN LAW FIRM, P.C.
121 E. Magnolia Street, Suite 102
Friendswood, Texas 77546
Telephone: (281) 648-7711
Facsimile: (281) 648-7799
Email: asadin@sadinlawfirm.com

***Counsel for Plaintiff Allied Services Division
Welfare Fund and the Proposed Class***